IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERETE FIELDS, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 17-2939 |
| : | |
| TRANS UNION, LLC et al., : | |
|     Defendants. : | |

## ORDER - MEMORANDUM

**AND NOW**, this 26th day of March, 2018, upon consideration of Plaintiff's Complaint (ECF No. 1), Defendant Bank of America, N.A.'s Motion to Dismiss (ECF Nos. 26 and 27) and all responses and replies thereto (ECF Nos. 29 and 36), Defendant JP Morgan Chase's Motion to Dismiss or in the Alternative to Compel Arbitration (ECF No. 11) and all responses and replies thereto (ECF Nos. 20 and 25), and Defendant Northland Group Inc.'s Motion to Dismiss (ECF Nos. 21 and 22) and all responses and replies thereto (ECF Nos. 28 and 33), it is hereby **ORDERED** as follows:

1. Defendant Bank of America, N.A.'s Motion (ECF Nos. 26 and 27) is **DENIED**.

2. Defendant JP Morgan Chase's Motion to Compel Arbitration (ECF No. 11) is **GRANTED**. Plaintiff's claim against Defendant JP Morgan Chase shall be referred to the federal arbitration program forthwith.

3. Defendant Northland Group Inc.'s Motion (ECF Nos. 21 and 22) is **GRANTED**. Plaintiff's claim against Defendant Northland Group Inc. is hereby **DISMISSED without prejudice**. Plaintiff is granted leave to amend Count II of the Complaint within fourteen (14) days of the date of this Order-Memorandum.

1

## Relevant Background

The following facts are presented in the light most favorable to Plaintiff. In February 2008, Plaintiff entered into an agreement with Defendant Bank of America, N.A. ("BoA") to cosign her then-husband's student loans. (ECF No. 27, ex. A.) In August of the same year, Plaintiff entered into an almost identical agreement with Defendant JP Morgan Chase Bank, N.A. ("Chase"). (ECF No. 11, ex. A.) Plaintiff and her former husband divorced four years later. (ECF No. 1, ¶ 11.) As part of the stipulated Divorce Agreement, Plaintiff's former husband assumed sole responsibility of his outstanding student loan debt, and was required to indemnify Plaintiff for any of her obligations related thereto. (ECF No. 1, ¶ 11.) Despite the terms of Plaintiff's Divorce Agreement, in late 2016, Defendant Northland Group, Inc. ("NGI") contacted Plaintiff by mail and demanded that Plaintiff pay toward an outstanding balance on her former husband's Chase loan. (ECF No. 1, ¶ 12.) And around that time, Plaintiff noticed that her credit reports – as provided by the defendant credit agencies – reflected negative credit information with respect to the Chase and BoA student loans. (ECF No. 1, ¶ 16.) Plaintiff formally disputed the accuracy of the BoA and Chase trade lines with Defendants Trans Union, LLC ("Trans Union") and Equifax. (ECF No. 1, ¶ 17.) In the filed disputes, Plaintiff enclosed her Divorce Agreement and informed the defendant credit agencies that Plaintiff's former husband was required by court order to indemnify Plaintiff for any of her responsibilities under the loan agreements. (ECF No. 1, ¶ 18.) Both Trans Union and Equifax acknowledged receipt of Plaintiff's dispute, and the dispute was forwarded to Defendants Chase and BoA for review. (ECF No. 1, ¶ 19-20). At some point thereafter, Plaintiff was informed that her accounts with Defendants Chase and BoA had been "verified," and that there would be no changes made to the disputed credit information. (ECF No. 1, ¶ 21.)

In March 2017, Defendant NGI made two additional attempts to collect payment from Plaintiff. (ECF No. 1, ¶ 24.) In May 2017, Plaintiff again disputed the accuracy of the reported credit information related to the Chase and BoA student loans with Defendants Trans Union and Equifax. (ECF No. 1, ¶ 27.) In her second dispute, Plaintiff again advised the defendant credit agencies that Plaintiff's husband was under court order to pay any remaining balances on the reported loans. (ECF No. 1, ¶ 28.) Plaintiff enclosed her Divorce Agreement for their reference. (ECF No. 1, ¶ 28.) Both Defendant Trans Union and Defendant Equifax acknowledged receipt of Plaintiff's second dispute, and reportedly forwarded said dispute to Defendants Chase and BoA. (ECF No. 1, ¶ 29-30.) Once again, Defendants Trans Union and Equifax notified Plaintiff that her accounts with Defendants Chase and BoA had been "verified," and that no changes would be made to the disputed credit information. (ECF No. 1, ¶ 31.)

After Plaintiff's second attempt to dispute the alleged inaccuracies in her credit report Defendant NGI contacted Plaintiff in an effort to collect on outstanding balances owed to Defendant Chase. (ECF No. 1, ¶¶ 35, 38.) According to Plaintiff, each time Defendants NGI engaged in collection efforts on behalf of the Defendant Chase, the amount sought in collection differed from the amounts reflected in Plaintiff's credit reports. (ECF No. 28, p. 4.) Based on all of the foregoing, Plaintiff's credit score dropped substantially, Plaintiff was denied for a personal loan, and two of Plaintiff's credit cards were closed. (ECF No. 1, ¶ 41.)

The instant action alleges violations of the Fair Credit Reporting Act, Fair Debt Collection Practices Act, and state tort law. Defendants BoA and NGI timely filed Motions to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Chase also seeks dismissal of the Complaint for failure to state a claim, but asks that in the alternative,

the Court compel Plaintiff to arbitrate her claims against Defendant Chase. The Court considers each Defendant's Motion herein.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## ANALYSIS

In the interests of clarity, the Court considers the merits of each Motion in turn.

I.  **Defendant Bank of America's Motion to Dismiss**

In Count I of the Complaint, Plaintiff alleges that Defendant BoA both willfully and negligently violated various provisions of the Fair Credit Reporting Act when it failed to remove inaccurate information from Plaintiff's credit file. (ECF No. 11, ¶ 48-55.) Plaintiff argues that

4

upon notice of her dispute, and following a reasonable investigation thereof, Defendant BoA should have reported its trade lines with Plaintiff as "disputed," or otherwise noted Plaintiff's indemnity right against her former spouse. (ECF No. 29, p. 9.) Defendant BoA seeks dismissal of the Complaint of the grounds that the bank accurately reported Plaintiff's obligation to her ex-husband's debt. (ECF No. 27, p. 6-7.) Defendant BoA argues that Plaintiff's Divorce Agreement did not, and could not, discharge Plaintiff's contractual obligations as cosigner, and Defendant BoA therefore accurately reported Plaintiff as liable for any outstanding balance on the loan issued. (ECF No. 27, p. 6-7.)

But the courts of several circuits have held that even technically accurate information in a credit report, "may be deemed inaccurate under the FCRA" if said information is misleading. Van Veen v. Equifax Info., 844 F. Supp. 2d 599, 605 (E.D. Pa. 2012) (citing to cases in the D.C., fourth, fifth, ninth, and sixth circuits). And in 2014, in an unpublished opinion, the Third Circuit expressly adopted this expansive view of the meaning of "inaccurate" under the FCRA. Schweitzer v. Equifax Info. Solutions, LLC, 441 F. App'x 896, 902 (3d Cir. 2011) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression."). Thus, the technical accuracy of Defendant Chase's statements regarding Plaintiff's indebtedness is not, itself, dispositive.

Considering a case with nearly identical facts, a court within this district found that a creditor-bank's failure to report the plaintiff-cosigner's indemnity rights against a former spouse could form the basis of an FCRA claim. Hillis v. Trans Union, LLC, 969 F. Supp. 2d 419, 421 (E.D. Pa. 2013) ("Once Santander learned of the divorce decree, it could have reported Plaintiff's account as 'disputed,' or marked it in some other way that would cause a future creditor to

5

inquire further and more completely understand Plaintiff's situation… If Plaintiff can prove that Santander's reporting was misleading enough to cause him harm, he may have an actionable claim under the FCRA.") This Court thoroughly reviewed the pleadings underlying the court's decision in Hillis. (Civil Action No. 13-2023, ECF No. 1.) Like the plaintiff in Hillis, Plaintiff here alleges that she formally disputed Defendant BoA's trade lines according to the defendant credit agencies' stated procedures. (ECF No. 1, ¶¶ 17, 27.) On at least two occasions, Plaintiff furnished her Divorce Agreement – from which Defendant BoA could have ascertained the veracity of Plaintiff's claim that Plaintiff's ex-husband assumed full responsibility for the loan debt. (ECF No. 1, ¶¶ 18, 28.) Though this would have not eradicated Plaintiff's responsibility to the outstanding debt, had future creditors known Plaintiff was indemnified for her liabilities by her former spouse, the creditors "may [have] view[ed] [Plaintiff] as a slightly more favorable credit risk." Hillis, 969 F. Supp. 2d at 421. Given the holding of Hillis, and that of several similar cases within this district, this Court is not prepared to rule, as a matter of law, that Plaintiff does not have a case against Defendants for violations of the FCRA. Bank of America's Motion is denied.

II.     **Defendant Chase's Motion to Dismiss or in the Alternative, to Compel Arbitration**

Defendant Chase's Motion seeks, in the first instance, dismissal of Plaintiff's Complaint for the same reason rejected above. As previously explained, this Court finds that Plaintiff pleads sufficient facts for a showing that the defendant banks reported misleading information regarding Plaintiff's obligations to her former husband's loans. As such, there is sufficient basis upon which Plaintiff may advance a claim against Defendant Chase for FCRA violations.

Defendant Chase moves, in the alternative, for this Court to compel Plaintiff to arbitrate her claims against Defendant Chase in accordance with the arbitration provision contained in the

executed loan agreement. (ECF No. 11, p. 4.) The arbitration agreement at issue provides that if any party to the contract so chooses, the signatories – Plaintiff and her former husband – give up their right to try any claim arising from the contract before a judge or jury. (ECF No. 11, ex. A, p. 6.) The agreement advises signatories that, by agreeing to the terms of the arbitration provision, the signatories may forfeit substantial rights as it relates to discovery, trial, and appeal. (ECF No. 11, ex. A, p. 6.) Under the terms of the arbitration agreement, if Plaintiff were to arbitrate the instant claim, she would be solely responsible for all arbitration costs above $1500.00, and for all attorney's fees. (ECF No. 11, ex. A, p. 6.)

Plaintiff argues that the arbitration agreement is unenforceable as unconscionable. (ECF No. 20, p. 10.) "To prove unconscionability under Pennsylvania law, [Plaintiff] must show that the contract was both substantively and procedurally unconscionable." Quilloin v. Tenet HealthSys. Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012). Plaintiff argues the arbitration agreement is procedurally unconscionable for two reasons: the agreement is presented in fine print and uses convoluted language, and Chase – the party with greatest bargaining power – presented the arbitration agreement on a "take it or leave it" basis. (ECF No. 20, p. 11.) Upon review of the record, this Court is not persuaded by either argument. The agreement to arbitrate is unambiguously placed within the loan document, the agreement employs plain language, and the sections of most significance are all capitalized. (ECF No. 11, ex. A, p. 6.) Plaintiff's arguments regarding Defendant Chase's bargaining power are similarly unavailing. Plaintiff, as cosigner, was not the direct beneficiary of the loans. And as Plaintiff signed the loan contract with Bank of America six months prior, Plaintiff was at least abstractly aware of financial institutions willing to service loans absent an executed arbitration agreement. The Court is

therefore unconvinced that Plaintiff felt so compelled to co-sign the loan agreement that she was effectively denied a meaningful choice with regard to the arbitration provision.

Plaintiff's substantive unconscionability arguments are also unpersuasive. First, Plaintiff argues arbitration would be cost prohibitive under the agreement. (ECF No. 20, p. 12.) But under the terms of the agreement, Defendant Chase would cover all fees up to $1,500.00 and any further fees ordered by the presiding arbitrator. (ECF No. 11, ex. A, p. 6.) And while Plaintiff would be required to pay for her own attorney – as is the case here – Defendant Chase could be required to cover Plaintiff's attorney's fees should the arbitrator so order. (ECF No. 11, ex. A, p. 6.) Second, Plaintiff baldly asserts that the arbitration provision imposes severe restrictions on discovery. (ECF No. 20, p. 12.) But the Court cannot consider the merits of said argument, because Plaintiff fails to identify what specific discovery limitations she would encounter, and how said limitations would impact her case.

Finally, despite Plaintiff's arguments to the contrary, the arbitration agreement is not unreasonably one-sided. Arbitration is mandatory at the election of *either* party. (ECF No. 11, ex. A, p. 6.) The parties must agree on the arbitration organization from which the arbitrator will be selected. (ECF No. 11, ex. A, p. 6.) And if permitted under the applicable arbitration rules, either party may request new arbitration if an award is entered against them. (ECF No. 11, ex. A, p. 6.) Given the foregoing, the Court finds no basis upon which to conclude the arbitration provision is unenforceable as unconscionable – substantively or procedurally.

The Court's assessment of Defendant Chase's Motion to Compel under the 12(b)(6) standard is proper. See Duane Koch v. Martin Koch, No. , 2016 U.S. Dist. LEXIS 72349, *1, *15 (E.D. Pa. June 3, 2016) (citing Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 773-774 (3d Cr. 2013)) (Where the affirmative defense of arbitrability of claims is apparent

on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery."). Both the existence of the arbitration agreement and the merits of Plaintiff's unconscionability defense are apparent from the face of the Complaint and the documents relied upon therein. Plaintiff does not request limited discovery, and the Court finds no basis upon which to believe limited discovery would be fruitful.

It is unfortunate that Plaintiff may be required to litigate many of the same issues in different forums. But, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571, F.3d 299, 308 (3d Cir. 2009) (quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983)). Defendant Chase's Motion to Compel Arbitration is granted. Plaintiff is directed to arbitrate all claims against Defendant Chase.

III. **Defendant Northland Group, Inc.'s Motion to Dismiss**

Plaintiff's claim against Defendant NGI is dismissed as insufficiently pled. In Count II of the Complaint, Plaintiff alleges that Defendant NGI violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq., (ECF No. 11, ¶ 56-58), but limits her arguments in opposition to Defendant NGI's Motion to alleged violations of Section 1692f(1). (ECF No. 28, ps. 5-8.) Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." It is unclear on what grounds Plaintiff has determined that Defendant NGI's collection efforts violated the FDCPA. Plaintiff fails to identify a wrongful charge, fee, or inclusion of

interest that would render Defendant NGI's attempt to collect actionable. Plaintiff fails to identify a provision in her loan agreement that would circumscribe Defendant NGI's ability to collect the amounts sought in Defendant NGI's letters. And the differences between the amounts reflected in Defendant NGI's letters and in Plaintiff's credit reports are insufficient evidence of deception or falsity – especially where Plaintiff's loan agreement with Defendant Chase expressly authorizes the accrual of interest at variable rates. (ECF No. 11, ex. A, p. 4.)

To the extent that Plaintiff has not abandoned her remaining claims against Defendant NGI for violations of Sections 1692d and 1692e of the FDCPA, this Court finds said claims to be equally deficient. Plaintiff fails to identify conduct by Defendant NGI that would amount to harassment or abuse, and fails to allege that Defendant NGI was made aware of Plaintiff's disputes of her trade lines with Defendant Chase. Without more, this Court cannot reasonably determine the propriety of Defendant NGI's collection efforts under any provision of the FDCPA. Plaintiff's claim against Defendant NGI is thus dismissed without prejudice and with leave to amend.

## CONCLUSION

Based on the foregoing, Defendant BoA's Motion to Dismiss is denied, Defendant Chase's Motion to Compel is granted, and Defendant NGI's Motion to Dismiss is granted. Plaintiff is granted leave to amend Count II of the Complaint within fourteen (14) days.

BY THE COURT:

/s/ C. Darnell Jones, II

C. Darnell Jones, II    J.